**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 18 B 35437 |
| STEVEN D. ZARLING, ) | |
| ) | |
| Debtor. ) | Chapter 7 |
| _____ ) | |
| ) | |
| LINDA NELSON, ) | |
| ) | Adv. No. 19 A 1009 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Judge David D. Cleary |
| STEVEN D. ZARLING, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

This matter comes before the court on the motion of Linda Nelson ("Plaintiff" or "Nelson") for judgment on the pleadings. Nelson filed an adversary complaint objecting to the discharge of Steven D. Zarling ("Defendant" or "Steven") under three subsections of 11 U.S.C. § 727. She seeks judgment in her favor only on the claim for relief under 11 U.S.C. § 727(a)(3). Steven filed a response to this motion, and Nelson filed a reply. Having reviewed the pleadings as well as the papers filed by the parties, the court denies the motion.

**I.     BACKGROUND FACTS**

In a motion for judgment on the pleadings, the court considers only the contents of the pleadings, including the complaint, answer, and any written instruments attached as exhibits. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F. 3rd 449, 452 (7th Cir. 1998) (citations omitted). Facts in the complaint are viewed in the light most favorable to the

non-moving party. *Id.* Although Plaintiff is the moving party, the court accepts as true the following allegations in the complaint, because they were admitted in Steven's answer:[1]

Steven lives on Greenwood Avenue in Hanover Park, Illinois with his mother, Jeannine Zarling ("Jeannine"), and his brother, Gary Zarling ("Gary"). Jeannine owns this real property. (Answer ¶ 7). Steven pays $370 per month to his mother for rent. (Answer ¶ 8).

Nelson filed suit against Steven in the Circuit Court of Cook County under Case No. 08 M3 3165. On September 29, 2008, the court entered an agreed judgment order against Steven and in favor of Nelson in the amount of $32,095.80. (Answer ¶ 4).

Post-judgment enforcement proceedings were continued from time to time until December 26, 2018, when Steven filed a petition for relief under Chapter 7 of the Bankruptcy Code. (Answer ¶ 5). Steven filed his Schedules and Statement of Financial Affairs the same day. (Answer ¶ 6).

About a week after his meeting of creditors in January 2019, Steven filed amended schedules. In these amended schedules he disclosed a February 2018 workers' compensation settlement in the amount of $39,810.82 (the "Settlement Funds"). (Answer ¶ 11).

Steven also disclosed a transfer of the Settlement Funds around that same time to "George" Zarling. This transfer was made to Gary. (Answer ¶¶ 12-13).[2]

Nelson issued a subpoena to Steven in June 2019, requesting the production of documents in advance of a Rule 2004 exam (the "Subpoena"). (Answer ¶ 15).

---

[1] There are many more allegations in the complaint and admissions in the answer; these are the allegations relevant to this Order.

[2] Steven states in his Response that "[t]he use of the name George Zarling instead of Gary Zarling was an inadvertent mistake on the part of counsel." (Response ¶ 19). While a statement in a response is not evidence, the court takes judicial notice of the papers and pleadings in *Mason v. Zarling*, 19 A 947, including the Order Denying Motion to Disqualify at EOD 36. In footnote 2 of the Order, the court acknowledged that the correct name of the recipient is Gary, not George. For the purposes of this decision, there is no dispute that Steven transferred the Settlement Funds to Gary.

2

Steven's records in response to the Subpoena showed that he received three checks totaling $39,810.82 (the "Workers' Compensation Checks"). (Answer ¶¶ 16-17). But his bank statements did not reflect any deposit or transfer of the Workers' Compensation Checks in or around the time he received them. (Answer ¶ 18).

Steven demonstrated an inability to produce records related to his transfer of the Settlement Funds and the reason for the transfer. To date, he has produced only a deposit slip showing the Workers' Compensation Checks were deposited by Gary. (Answer ¶ 42).

When asked in the Statement of Financial Affairs about his sources of income, Steven disclosed only Social Security, SNAP (Supplemental Nutrition Assistance Program) and AABD (Aid to the Aged, Blind, and Disabled). (Answer ¶ 14).

Steven's bank statements, produced in response to the Subpoena, reflect income from an unknown source that is not reported on his schedules or Statement of Financial Affairs. (Answer ¶¶ 19-20). The following deposits were made within the year prior to Steven's bankruptcy filing (the "Undisclosed Income"):

| DATE | AMOUNT | DATE | AMOUNT |
| --- | --- | --- | --- |
| 12/28/2017 | $300.00 | 7/9/2018 | $1,000.00 |
| 1/29/2018 | $400.00 | 8/1/2018 | $445.00 |
| 2/5/2018 | $420.66 | 8/30/2018 | $220.00 |
| 3/1/2018 | $450.00 | 10/1/2018 | $470.00 |
| 3/22/2018 | $2,000.00 | 10/18/2018 | $500.05 |
| 4/25/2018 | $1,460.00 | 11/30/2018 | $500.00 |
| 6/16/2018 | $400.00 | 12/13/2018 | $400.00 |

(Answer ¶ 19).

Steven sat for a Rule 2004 exam on October 25, 2019 (the "2004 Exam"). He confirmed that none of the income in his bank account belongs to Jeannine or any other person. (Answer ¶¶ 21-22).

After the 2004 Exam, Steven produced a deposit slip showing the deposit of the Workers' Compensation Checks by Gary on March 5, 2018. Steven did not offer any proof of indebtedness to Gary, any documentation regarding loans from or obligations to Gary, or any other payments to or from Gary. (Answer ¶ 34).

Steven failed to disclose his receipt of the Undisclosed Income and did not adequately explain or offer any documentation regarding the Undisclosed Income. (Answer ¶ 35, 44).

## II. DISCUSSION

Nelson moves for judgment on the pleadings pursuant to Fed. R. Bankr. P. 7012, which incorporates Fed. R. Civ. P. 12(c): "After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Pleadings include the complaint, the answer, and any written instruments attached as exhibits. *Northern Indiana Gun & Outdoor Shows*, 163 F. 3rd at 452.

### A. Standard for motion for judgment on the pleadings

A court should grant a motion for judgment on the pleadings only if the moving party clearly establishes that no material issue of fact exists and that she is entitled to judgment as a matter of law. *National Fidelity Life Ins. Co. v. Karaganis*, 811 F. 2nd 357, 358 (7th Cir. 1987). "When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Group, Inc.*, ___

4

F. 3rd ___, 2020 WL 5036095, at *2 (7th Cir. Aug. 26, 2020) (citation omitted). The court views the facts in the pleadings in the light most favorable to the non-moving party. *See Buchanan-Moore v. County of Milwaukee*, 570 F. 3rd 824, 827 (7th Cir. 2009).

### B. Standard for denial of discharge under 11 U.S.C. § 727(a)(3)

Nelson seeks judgment on her claim for relief under 11 U.S.C. § 727(a)(3).[3] Objections to discharge are construed strictly against the objecting creditor and liberally in favor of the debtor. *See In re Kontrick*, 295 F. 3rd 724, 736 (7th Cir. 2002), *aff'd*, *Kontrick v. Ryan*, 540 U.S. 443 (2004). Denial of discharge is a drastic remedy reserved only for the worst actors. *See, e.g., Stathopoulos v. Bostrom*, 286 B.R. 352, 359 (Bankr. N.D. Ill. 2002), *aff'd*, 2003 WL 403138 (N.D. Ill. Feb. 20, 2003).

Pursuant to § 727(a)(3):

(a) The court shall grant the debtor a discharge, unless - . . .

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

A creditor need not prove that the debtor intended to defraud it by failing to keep or destroying books and records. "Section 727(a)(3) does not require proof of criminal or quasi-criminal conduct." *In re Scott*, 172 F. 3rd 959, 969 (7th Cir. 1999).

While the Seventh Circuit has instructed lower courts that the language of § 727(a)(3) "places an affirmative duty on the debtor to create books and records accurately documenting his business affairs," *id.* (citation omitted), it gave that instruction in the context of a complicated

---

[3] Nelson incorrectly titled this claim for relief as Count III. It is actually Count II. This mistake is irrelevant for purposes of this decision, as it is clear that Nelson seeks judgment on the pleadings with respect to her claim for relief under 11 U.S.C. § 727(a)(3).

Chapter 11. In contrast, "most bankruptcies are consumer-type bankruptcies with no assets or business affairs to speak of, and, therefore, the complexity of their business transactions do not implicate § 727(a)(3)." *Id.* at 970.

Although a debtor must provide organized documentation of his assets, "[o]bjections to discharge under § 727(a)(3) are not usually decided on summary judgment, as they normally require a fact intensive inquiry regarding the adequacy of the defendant's records." *In re Liu*, 288 B.R. 155, 161 (Bankr. N.D. Ga. 2002). Moreover, section 727(a)(3) states that the discharge will be denied for failure to keep records "unless such act or failure to act was justified under all of the circumstances of the case."

### C. Records relating to the Workers' Compensation Checks

Nelson's first argument is that Steven failed to create, maintain and produce records relating to the Workers' Compensation Checks. As a result, she is unable to ascertain his financial condition and track his finances with substantial completeness and accuracy. Nelson analogizes this situation to the one before the court in *In re Fink*, 351 B.R. 511 (Bankr. N.D. Ill. 2006). In *Fink*, a physician's discharge was denied under § 727(a)(3) on a motion for judgment on the pleadings after he could not demonstrate that his failure to keep recorded financial information was justified under all of the circumstances of the case.

Nelson highlights the fact that when Steven filed his original schedules on December 26, 2018, he did not disclose the 2018 workers' compensation settlement, or that he had transferred the Settlement Funds to his brother Gary. He disclosed the transfer in his amended schedules, filed about a month later.

6

Whether or not Steven's discharge should be denied for failure to disclose the transfer in his original filings, however, is not a question before the court today. The issue is whether he failed to keep records from which his financial condition can be ascertained.

Nelson also argues that when Steven amended his schedules in February 2019, he provided no records or documents indicating the transfer to Gary. (Motion ¶ 22). She wrote in her reply that "Debtor only provided financial records regarding the [Workers' Compensation Checks] when compelled by subpoena." (Reply at 2).

In making these arguments, Nelson appears to be asserting that Steven acted improperly. He did not. 11 U.S.C. § 521(a) required Steven to file a schedule of assets and liabilities and a schedule of current income and current expenditures. The Code does not require production of supporting records unless and until a case trustee or creditor requests them, usually under Fed. R. Bankr. P. 2004.

After Nelson issued the Subpoena, Steven produced records that showed he received the Workers' Compensation Checks. And after his 2004 Exam, he produced a deposit slip showing that Gary deposited the Settlement Funds. Steven complied with the requirements of the Bankruptcy Code, and when a subpoena was issued, he complied with that as well.

Nelson criticizes Steven for suggesting "that because he is not a medical doctor with multiple LLCs (distinguishing himself from the debtor in *Fink*) he is immunized from the obligations of Section 727(a)(3)." (Reply at 2). Yet even the *Fink* decision acknowledges that "[t]he completeness and accuracy of a debtor's records are to be determined on a case-by-case basis, considering the size and complexity of the debtor's financial situation." 351 B.R. at 522-23. Unlike Steven, Dr. Fink's "financial affairs were complicated and complex, thus, necessitating an attendant duty to make and keep sufficient records to trace and disclose his

7

multiple business and personal financial affairs." *Id.* at 523. As the court noted earlier in this order, the Seventh Circuit reminds us that "most bankruptcies are consumer-type bankruptcies with no assets or business affairs to speak of, and, therefore, the complexity of their business transactions do not implicate § 727(a)(3)." *Scott*, 172 F. 3rd at 970. Steven's is the "consumer-type" case to which the panel was referring.

Steven admits that he did not offer any proof of indebtedness to Gary, any documentation regarding loans from or obligations to Gary, or any other payments to or from Gary. Viewing the facts in the pleadings in the light most favorable to Steven, the non-moving party, it is plausible that he offered no written proof of a loan or debt because none exist, or because none are necessary to an understanding of his financial condition.

Moreover, the statute warns us that failing to keep records may result in denial of discharge, but not if the failure to act was justified under all the circumstances of the case. When requested to do so, Steven produced records that evidenced receipt of the Workers' Compensation Checks as well as a deposit slip showing that Gary deposited the funds. The court has no information regarding any of the circumstances under which this transaction occurred, and whether the failure to keep additional records was justified.

Therefore, at this stage of the proceeding, regarding the Workers' Compensation Checks and the transfer of the Settlement Funds, the court cannot find as a matter of law that Steven "failed to keep or preserve any recorded information . . .from which [his] financial condition or business transactions might be ascertained."

### D. Records relating to the Undisclosed Income

Nelson's second argument is that Steven failed to keep, maintain and produce records relating to the Undisclosed Income. She analogizes again to *Fink*, in which the court denied the

debtor's discharge after he admitted that his reported income on his W-2 and 1099 was $12,000 to $17,000 higher than the income reported on his Statement of Financial Affairs. 351 B.R. 511.

This analogy is not convincing. In *Fink*, the false disclosures of income on the Statement of Financial Affairs were the basis for denial of discharge *under 11 U.S.C. § 727(a)(4)(A)*:

>**(a)** The court shall grant the debtor a discharge, unless--
>
>>**(4)** the debtor knowingly and fraudulently, in or in connection with the case--
>>
>>>**(A)** made a false oath or account;

One of the elements a plaintiff must establish to support a claim for relief under § 727(a)(4)(A) is that the debtor made a false statement. The *Fink* court found that the debtor made a false statement because his "Statement of Financial Affairs and amended Statement of Financial Affairs fail to accurately and completely disclose his income for the years 2003 and 2004." *Id.* at 526.

Nelson appears to conflate §§ 727(a)(3) and (a)(4)(A) when she argues that Steven's amended schedules are not accurate "because they still do not disclose any other source of income other than Social Security, SNAP, and AABD." (Motion ¶ 29).

Keeping the focus on § 727(a)(3), Steven admitted in his answer that he did not adequately explain or offer any documentation regarding the Undisclosed Income. Nelson concludes that this "makes it impossible for this Court or Nelson to ascertain Debtor's true financial condition or to track his financial dealings with substantial completeness and accuracy." (Motion ¶ 31).

When required to do so by subpoena, however, Steven turned over bank statements that reflected the deposits of the Undisclosed Income. He may have improperly omitted this income from his Statement of Financial Affairs, which requires disclosure of income from employment

as well as any other income.[4] But including false information on the Statement of Financial Affairs is not a basis for denial of discharge under § 727(a)(3).

Moreover, unlike any other subsection of 11 U.S.C. § 727, subsection (a)(3) carves out an exception. Even if a debtor has failed to keep or preserve any books and records from which his financial condition may be determined, his discharge will not be denied if "such act or failure to act was justified under all of the circumstances of the case."

What we know from the pleadings is that Steven received irregular deposits of varying amounts of money during the year prior to filing for relief under the Bankruptcy Code. He makes an argument in his response regarding the nature of the deposits. Statements in a response are not part of the pleadings, and so cannot be considered when deciding a motion for judgment on the pleadings.

But the court can take judicial notice of items in the record. Steven's petition suggests that he is a debtor who suffered serious health issues in the past few years. Nearly half of the creditors on Schedule F are health care providers. His petition reflects a significant amount of debt and few assets. Steven lives with his mother and pays a small amount to her in rent. He owns no real property or automobiles and has $200 in the bank. Most of his income is attributable to government benefit programs. He does not own, manage or run a business.

The court is mindful of the standard under which this motion must be resolved. "[T]he motion should not be granted unless it appears beyond doubt that the non-moving party cannot prove facts sufficient to support his position." *Housing Authority Risk Retention Group, Inc. v. Chicago Housing Authority,* 378 F. 3rd 596, 600 (7th Cir. 2004) (quotation omitted). This high

---

[4] Steven asserts that he is required only to disclose the prior six months of income from any source, citing to 11 U.S.C. § 101(10)(A) and (B). (Response ¶ 25). It is true that Form 122A-1 asks only for a six-month lookback to be used in calculating current monthly income. But the Statement of Financial Affairs at Question 5 requires disclosure of "any other income" received during the past year or the two previous calendar years.

standard has not been satisfied. It is plausible to infer that Steven's failure to keep records regarding the Undisclosed Income was justified under the circumstances of the case.

### III. CONCLUSION

For all of the reasons stated above, it is not beyond doubt that Steven cannot prove facts sufficient to support his position. Nelson has not established that no material issue of fact exists and that she is entitled to judgment as a matter of law. **IT IS HEREBY ORDERED THAT** the motion for judgment on the pleadings is **DENIED**.

Status on the adversary complaint is continued to September 23, 2020 at 10:30 a.m.

ENTERED:

Date: September 18, 2020

DAVID D. CLEARY
United States Bankruptcy Judge