**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | In Chapter 7 |
| | ) | |
| **STEVEN D. ZARLING,** | ) | **Case No.  18-bk-35437** |
| | ) | |
| Debtor. | ) | **Honorable David D. Cleary** |
| | ) | |
| | ) | |
| **LINDA NELSON,** | ) | |
| | ) | |
| Plaintiff, | ) | **Adv. Case No. 19 AP 01009** |
| v. | ) | |
| | ) | |
| **STEVEN D. ZARLING,** | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S POST-TRIAL BRIEF

Plaintiff/Creditor, Linda Nelson ("Ms. Nelson"), by her attorneys, Caren A. Lederer and

Robert R. Benjamin of Golan Christie Taglia LLP, respectfully submits her Post-Trial Brief, and

in support thereof and of denial of discharge to the Debtor, Ms. Nelson states as follows:

### Introduction

The discharge of debt is not an inalienable right, it is a statutory privilege that must be

earned. Debtors seeking discharge have one paramount obligation, and that is to be honest,

forthright and truthful.  Throughout the course of this bankruptcy proceeding, Debtor, Steven D.

Zarling ("Debtor") has mislead, misinformed and misdirected his counsel, creditor's counsel, and

this Court with half-truths and shrugged shoulders. Debtor's discharge should be denied because

his pattern of behavior is no mere mistake. His trial testimony established, and his brother

confirmed, that Debtor violated 11 U. S. C. § 727(a)(2) in multiple ways, including the fraudulent

transfer of $39,810.83 to his brother, and the repeated failure to properly disclose  assets, income

and liabilities that included other inter-family payments and claims, another $8,965.71 in undisclosed income, $16,000.00 owed by his nephew, and his active and ongoing participation in class-actions lawsuits which paid him unreported dividends. The evidence also supports denial under 11 U.S. C. § 727(a)(3), for the Debtor's failing to create, maintain, and produce records relating to each and all of the income, assets, claims, and transfers. Debtor's trial testimony on these assets and transfers also confirms that his sworn statements, including his signed Petition, Schedules, Statement of Financial Affairs, and the amendments he did make to these pleadings, were untrue – and Debtor showed, at the very least, a reckless disregard for truth and honesty. As such, 11 U.S. C. § 727(a)(4) provides the basis for denial of discharge for his false oaths in connection with his bankruptcy case.

Any one of the statutory grounds asserted in the Adversary Complaint is enough to deny the Debtor's discharge. Ms. Nelson has met her burden on all of them. Importantly, the Debtor's disregard of his obligation for transparency continues through this very day, since despite the new assets and transfers and claims he testified to at trial, he has not bothered to amend his papers to accurately reflect them. Discharges are earned, and this Debtor has simply not met the mark.

### Established Facts

1.      Debtor did not disclose his 2018 worker's compensation proceeds of $39,810.82 (the "Settlement Funds") in his original Schedules or his original Statement of Financial Affairs. (Answer, ¶6[1]; Trial Trans. 54:8-55:10; 61:9-24)[2]. When asked why he did not disclose the Settlement Funds, Debtor answered, "I don't know" before shifting blame to his attorneys. (Trial Trans. 55:6-10).

---

[1] Debtor's Answer to Ms. Nelson's Complaint [Dkt No. 11] is attached as **Exhibit A**.
[2] The November 18, 2020 trial transcript is attached as **Exhibit B** and is cited as (Trial Trans. _:_).

2.      Debtor only disclosed his receipt of the Settlement Funds at his 341 Meeting, (Answer, ¶9; Trial Trans. 64:23-65:10). Pursuant to the Trustee's direction, Debtor filed Amended Schedules and Statement of Financial Affairs [Dkt Nos. 12, 13], but even then misidentified the recipient, his only brother Gary, as "George" [Dkt. No. 13].  At trial, Debtor blamed this error on his counsel as well.  (Trial Trans. 69:10-70:7).

3.      Debtor testified that he endorsed the WC Checks to his brother and asked him to help manage daily expenses. (Trial Trans. 33:19-24). Debtor stated that he did not deposit the WC Checks into his own bank account because he believed he could only have $2,000 in his bank account for social security purposes. (Trial Trans. 31:15-19). Debtor also testified that his intention was to use the Settlement Funds to repay his brother for debts he owed him, although there is no written agreement of it, and he did not schedule Gary as a creditor. (Trial Trans. 32:15-16; 36:19-25; 78:5-8; Petition [Dkt No. 1]).

4.      Debtor also disclosed that his nephew, Jeremy Weiss, owed him around $16,000.00 for expenses the Debtor paid. (Trial Trans. 34:4-20; 36:11-18; 73:25-74:3). Debtor claimed that his nephew "ran up [his] credit cards," "moved off with his girlfriend," and "stuck [Debtor] with all that debt." (Trial Trans. 35:5-10). Debtor did not disclose any of this information prior to the trial. (Trial Trans. 74:3-6). Debtor has not amended his schedules to this day.

5.      Debtor also failed to disclose certain income received in the months prior to the Petition, totaling $8,965.71 (the "Undisclosed Income.")(Answer, ¶ 19). At trial, Debtor testified that the money was deposited from his brother's account, but was really the Settlement Funds. (Trial Trans. 73:2-10).  Debtor also testified that deposits of Undisclosed Income dating prior to

3

the February 2018 Settlement Funds, came from his nephew, Jeremy Weiss. (Trial Trans. 73:11-20).

6.    At trial, while attempting to explain the source(s) of the Undisclosed Income, Debtor also admitted to being a participant in "two or three" class action lawsuits against Cook County. (Trial Trans. 75:5-13). Debtor received distributions from these class action lawsuits, but did not disclose them on his original or amended petition, schedules, or statements of financial affairs. (Trial Trans. 75:5-76:18). He did not disclose them at his 341 Meeting, or at any time prior to the trial.  He has not amended his schedules to this day.

<u>Argument</u>

**I.    Debtor's Discharge Should be Denied Pursuant to Count I - 11 U.S.C § 727(a)(2)**

Section 727(a)(2)(A) provides that a discharge will be denied if the "debtor, with intent to hinder, delay, or defraud a creditor ... has transferred, removed, destroyed, mutilated, or concealed ... property of the debtor, within one year before the date of the filing of the petition." 11 U.S.C. § 727(a)(2)(A); *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002)*; In re Murphy*, No. 18-71012, 2020 WL 6066002, at *12 (Bankr. C.D. Ill. Sept. 2, 2020).  Because direct evidence of fraud is rare, courts consider the following factors as circumstantial evidence of intent:

> (1) The lack or inadequacy of consideration; (2) the family, friendship, or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of the pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and transactions under inquiry.

*Id.* (citing *Vill. of San Jose v. McWilliams*, 284 F.3d 785, 791 (7th Cir. 2002)).

Here, the evidence firmly establishes that Debtor violated 11 U.S.C § 727(a)(2) by: 1) deliberately omitting disclosure of the $39,810.82 in Settlement Funds; 2) transferring the Settlement Funds to an insider within one year prior to the Petition Date; 3) paying up to $16,000.00, to his nephew, Jeremy Weiss, but not scheduling this claim at any time (Trial Trans. 76:1-77:18); and 4) concealing his participation in as well as all distributions from the class action lawsuits disclosed for the first time at trial.  (Trial Trans. 75:2-25).

Looking at the factors set forth *supra* in *McWilliams*, Debtor's intent to delay or defraud creditors is shown by the lack of consideration for the transfer of Settlement Funds to his brother; and the lack of consideration for the transfer of Settlement Funds to his nephew.  There are also the familial relationships between Debtor and his brother, and between Debtor and his nephew. *McWilliams*, 284 F.3d at 791. In addition, Debtor is unable to provide any documentation regarding loans or obligations to his brother. (Answer ¶ 34; Trial Trans. 78:5-8).  To the extent the brother used the Settlement Funds to pay expenses for the Debtor, including payment of Debtor's attorneys' fees and food expenses (G. Zarling Trial Trans. 35:19-36:6)[3], the Debtor benefitted from the Settlement Funds without ever disclosing them to creditors.

Debtor and his brother, Gary Zarling, provided conflicting testimony at trial regarding the reason Debtor transferred the Settlement Funds to Gary. Debtor has variously claimed that he transferred the Settlement Funds to Gary so that Gary could "manage the monies," first because he had prior issues with drugs and alcohol and didn't want to relapse (Trial Trans. 32:7-14), then later because he did not want to risk his social security payments by having more than $2,000 in his account (Trial Trans. 31:15-19).  He also mentioned that his "intention was to try to repay him some monies..." (Trial Trans. 32:15-23). His brother Gary, however, testified that he deposited the checks for the Debtor because Debtor had fallen out of bed and was unable to leave

---

[3] The January 6, 2021 trial transcript is attached as **Exhibit C** and is cited as (G. Zarling Trial Trans. _:_).

the house (Trial Trans. 31:20-32.) To Gary's mind, he was not managing the Debtor's money at all (Trial Trans. 32:3-6), but merely acted as an ATM, giving Debtor his own money "whenever he needed" and for "whatever he wanted." (G. Zarling Trial Trans. 13:14-15:9). In fact, Gary repeatedly claimed that he knows *nothing* about Debtor's finances. (G. Zarling Trial Trans. 8:12; 9:17; 10:2-3; 11:13; 11:24-12:1) Debtor's concealment of the Settlement Funds, improper transfer to his brother, and conflicting reasoning for the improper transfer clearly evidence his intent to hinder, delay or defraud his creditors. Similarly, Debtor's trial-day admissions of transfers to (and therefore claims against) his nephew, coupled with their glaring omission from any disclosures to the Court, evidence his intent to conceal these claims. (Answer ¶ 34; Trial Trans. 78:9-11).  Debtor's handling of the Settlement Funds should be sufficient under 11 U.S.C § 727(a)(2) to deny the discharge, but there are yet more reasons.

Debtor also failed to disclose all of the Undisclosed Income received in the months prior to the Petition, totaling $8,965.71. (Answer ¶ 19; Trial Trans. 70:1-80:21). Debtor defends these repeated failures to disclose by minimizing them, arguing that since it is not enough to alter his eligibility for chapter 7, the non-disclosure itself should be ignored. He further argues that since he amended his schedules or produced some receipts *after* the Settlement Funds and Undisclosed Income were discovered, his concealment is "cured" and need not have consequences.

Even if any one of the concealments might not justify the denial of discharge, together, the pattern of non-disclosure cannot be overlooked. Debtor completely ignores the affirmative obligations imposed upon him when he asks to be relieved of all his debts. Debtor's behavior exemplifies the kind of "cheating" that is altogether too attractive:  disclosing only certain assets and income, forcing creditors to dig through account statements to pair up deposits to reported income, then shrugging off the refusal to be candid. Debtor is not entitled to the benefit of the

discharge, because he has not conducted himself with the transparency required to merit that discharge.

## II.    Debtor's Discharge Should be Denied Pursuant to Count II - 11 U.S.C § 727(a)(3)

Section 727(a)(3) provides for the denial of a debtor's discharge if "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such failure to act was justified under all of the circumstances of the case[.]" 11 U.S.C. § 727(a)(3). *In re Murphy*, No. 18-71012, 2020 WL 6066002, at *15 (Bankr. C.D. Ill. Sept. 2, 2020.)

Section 727(a)(3) requires as a precondition to discharge that debtors produce records which provide creditors "with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Juzwiak,* 89 F.3d at 427. This statute "ensures that trustees and creditors will receive sufficient information to enable them to 'trace the debtor's financial history; to ascertain the debtor's financial condition; and to reconstruct the debtor's financial transactions. *Fink*, 351 B.R. at 522 (citing *Juzwiak,* 89 F.3d at 427-28).

The court should not be required to speculate as to the financial history or condition of the debtor, nor should the court be compelled to reconstruct the debtor's affairs. *In re Fink*, 351 B.R. 511, 428 (Bankr. N.D. Ill. 2006). Moreover, the burden is not on the creditor to reconstruct the debtor's financial affairs. *Id*. at 429. A debtor has an obligation to reveal, rather than conceal, his complete financial condition. *Id*. at 524. Further, a debtor has an affirmative duty to take reasonable precautions to maintain and preserve records of their financial transactions and affairs. *Id*. at 522.

A creditor has the initial burden of proving that the debtor failed to keep adequate records. *Id.* A creditor is not required to prove intent, criminal, or quasi-criminal conduct in proving debtor's failure to maintain adequate records. *Id.* Rather, a creditor need only prove transfer or removal of assets, destruction or wasting of assets, or concealment of assets. *Id.*

Once a creditor proves the debtor's records are inadequate, the burden shifts to the debtor to justify the lack of adequate records. *Id.* Debtor's discharge should be denied under 11 U.S.C § 727(a)(3) because Debtor failed to create, maintain, and produce records relating to $39,810.83 in worker's compensation checks, the $8,965.71 in Undisclosed Income, the $16,000.00 that Debtor transferred to his nephew, and the distributions Debtor received from his class action lawsuits.

First, Debtor's failure to create, maintain, and produce records relating to the worker's compensation checks have made it impossible for this Court and Ms. Nelson to ascertain Debtor's true financial condition and track his finances with substantial completeness and accuracy. As outlined above, Debtor only produced documents about the Settlement Funds after they were discovered, and no documents about how or by whom they were spent. Debtor claims these were mere oversights, as if either temporarily forgetting his only brother's name, or failing to review the pleadings he signed for accuracy, is a valid excuse for the omissions. Debtor failed to uphold his obligation to reveal—rather than conceal—his financial condition, which has forced this Court and Ms. Nelson to speculate as to his financial history and condition. Debtor's inability to produce records and the reasons for the transfers makes it impossible for Ms. Nelson or the Court to ascertain his true financial condition, including any other undisclosed assets or transfers. (Answer ¶ 42; Trial Trans. 33:19-34:11; 74:18-25; G. Zarling Trial Trans. 26:23-27:1). Therefore, his discharge should be denied.

Separate from the concealed Settlement Funds, Debtor's discharge should be denied under 11 U.S.C § 727(a)(3) because he failed to keep, maintain, and produce records relating to additional Undisclosed Income amounting to $8,965.71.In his Schedules and Statement of Financial Affairs, Debtor disclosed no source of income other than Social Security, SNAP, and AABD. (Answer ¶ 14; Trial Trans. 68:4-14). However, in July 2019, Debtor produced bank statements in response to Plaintiff's subpoena that reflect undisclosed income from an unknown source totaling $8,965.71 in deposits within the year prior to Debtor's Petition. Debtor and testified that some of the Undisclosed Income was from the Settlement Funds, but some deposits came from his nephew, Jeremy Weiss (Trial Trans 73:2-274:17; G. Zarling Trial Trans. 21:25-22:1; 25:5-24), and other deposits came from dividends Debtor received as a participant in class action lawsuits (Trial Trans. 75:2-77:9). Gary Zarling also admitted to giving Debtor monthly payments ranging between $500 and $1,500 a month after Debtor spent all of the Settlement Funds. (G. Zarling Trial Trans. 25:1-24). Debtor's failure to produce records that accurately disclosed his income made it impossible for this Court and Ms. Nelson to ascertain Debtor's true financial condition, and his discharge should be denied. (Answer ¶ 44, 45).

In addition to concealment of the Settlement Funds and the Undisclosed Income, Debtor's discharge should also be denied under 11 U.S.C § 727(a)(3) because he failed to keep, maintain, and produce records relating to either the $16,000 that he testified at trial – for the first time ever – he had paid for the benefit of his nephew, or the distributions he received as a participant in multiple class action lawsuits, which he also never disclosed. Debtor failed to keep or produce any records relating to these transfers and assets. Further, Debtor disclosed the existence of these transfers and assets for the first time during trial, raising the perfectly logical

question of what *else* Debtor may be concealing. Debtor's ongoing concealment and deceit makes it impossible for Ms. Nelson and this Court to ascertain his true financial condition.

Between the Settlement Funds, Undisclosed Income, $16,000 spent on or given to his nephew, and the class action lawsuit distributions, Debtor failed to disclose or produce records reflecting a minimum amount of $65,106.54… and the testimony at trial was vague, conflicting, and palpably misleading. After considering the totality of the evidence, including Debtor's significant admissions in his Answer and trial testimony, Nelson has clearly satisfied her burden under § 727(a)(3) by a preponderance of the evidence, and Debtor has admitted that he has no explanation. His trial testimony did not fill in the missing pieces—it actually revealed a larger scope of concealment. As a result of Debtor's conduct, this Court should deny Debtor's discharge.

## III.    Debtor's Discharge Should be Denied Pursuant to Count II - 11 U.S.C § 727(a)(4)

Section 727(a)(4)(A) bars a debtor from receiving a discharge if he knowingly and fraudulently makes a false oath in connection with his bankruptcy case. 11 U.S.C. § 727(a)(4)(A). *Murphy*, No. 2020 WL 6066002, at *13. "The purpose of § 727(a)(4) is to ensure that the debtor provides dependable information to those who are interested in the administration of the bankruptcy estate." *Clean Cut Tree Serv., Inc. v. Costello (In re Costello)*, 299 B.R. 882, 899 (Bankr. N.D. Ill. 2003).

A plaintiff seeking to deny a debtor's discharge under § 727(a)(4)(A) "must prove by a preponderance of evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Stamat v. Neary*, 635 F.3d 974, 978 (7th Cir. 2011).

A debtor's fraudulent intent can be established by showing either intentional misrepresentations or a reckless disregard for the truth. *Id.* at 982. Statements made by a debtor on the bankruptcy petition, schedules of assets and liabilities, or SOFA are all considered to be under oath for the purposes of § 727(a)(4)(A). *John Deere Co. v. Broholm (In re Broholm)*, 310 B.R. 864, 880 (Bankr. N.D. Ill. 2004). A fact is material if it relates to the debtor's financial dealings or the existence and disposition of the debtor's property. *Stamat*, 635 F.3d at 982.

The same facts and circumstances which merit denial of discharge under 727(a) (2) and (a)(3) also support denial of discharge under 727(a)(4). Debtor's sworn Schedules and SOFA were materially inaccurate when filed, his lukewarm attempts to amend them, which were also sworn to, were equally inaccurate, and despite the elapse of nearly three months since his surprise revelations of other assets and claims and obligations made at trial, Debtor has made no attempt to correct his filings even up to this very day.

## Conclusion

The Debtor's actions and inaction, his sworn filings and testimony, all drive to a necessary conclusion: that he did not, and indeed does not, take his obligations in bankruptcy seriously.  He intends to reap the benefit of a discharge of all his debt, without bothering to be honest in his disclosures to the Court and his creditors - who will get nothing while he continues to use and benefit from assets of the estate he never revealed.  His conduct cannot be condoned, as the Court now knows that there are more, and perhaps even a lot more, assets and claims in this case.  He has not been forthright, and in no way has the Debtor demonstrated the honesty required to merit discharge of debts.  Ms. Nelson has proved, with Debtor's own pleadings and testimony, and the testimony of his own brother, that his lack of candor violates the provisions of

727, and she has met her burden on each of Counts I, II and III.   The Court should deny

discharge.

Dated: February 16, 2021                                LINDA NELSON,


                                                        By: */s/ Caren A. Lederer*
                                                              One of her attorneys

Robert R. Benjamin (ARDC #0170429)
Caren A. Lederer (ARDC # 6244631)
GOLAN CHRISTIE TAGLIA LLP
Attorneys for Linda Nelson
70 West Madison, Suite 1500
Chicago, Illinois 60602
312-263-2300
rrbenjamin@gct.law
calederer@gct.law